UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BONNIE LEE LEEDY,

    Plaintiff,

v.                                                                                        Civ. No. 16-224 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand to Agency for a Rehearing, With Supporting Memorandum" ("Motion"), filed on November 7, 2016. ECF No. 22. The Commissioner responded on February 7, 2017. ECF No. 26. Plaintiff replied on March 6, 2017. ECF No. 27. Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

**I.    BACKGROUND**

Plaintiff was born on October 16, 1974, in Pennsylvania. Administrative R. ("AR") 125, 397. Plaintiff graduated from high school in 1993 and worked thereafter as a cashier in various capacities and as a home health care provider. AR 291. She quit working sometime in 2011. AR 291.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 13, 2012. AR 265-276. Plaintiff claimed disability beginning on July 31, 2011, based on a mental problem, an emotional problem, depression,

1

anxiety attacks, a neck injury, migraines, chronic neck and shoulder pain, and deformity of the spine.[1] The Social Security Administration ("SSA") denied Plaintiff's application initially on March 13, 2013, and upon reconsideration on May 30, 2013. AR 138, 152, 168, 183. At her request, Plaintiff received a *de novo* hearing before ALJ Gerardo Perez on October 2, 2014, at which Plaintiff, her attorney, and vocational expert ("VE") Thomas Munget appeared. AR 66-95. On August 5, 2014, the ALJ issued his decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 60. Plaintiff appealed to the SSA Appeals Council, but it declined review on February 17, 2016. AR 1-4. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed her appeal with this Court on March 24, 2016. ECF No. 1.

## II.  PLAINTIFF'S CLAIMS

Plaintiff advances two grounds for relief. First, Plaintiff argues that the ALJ failed to properly consider and incorporate the limitations caused by her migraines into her residual functional capacity ("RFC"). Pl.'s Mot. 8-11, ECF No. 22. Additionally, she contends the ALJ committed legal error by improperly evaluating the opinion of consultative examiner Dr. John Koewler, Ph.D. *Id.* at 11-14.

## III.  APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[2] The Court's review of that final agency decision is

---

[1] Claimants self-report their allegedly disabling conditions, and as a consequence, the ailments claimed are often somewhat vernacular, vague, and non-technical.

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that [he] has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to

relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's RFC. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

The ALJ issued his decision on December 19, 2014. AR 47. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 31, 2011. AR 52. At step two, the ALJ found Plaintiff's degenerative disc disease, affective disorder, personality disorder, and anxiety to be severe impairments. AR 52. In contrast, the ALJ found Plaintiff's migraines to be non-severe. AR 53.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 53-54. The ALJ began his discussion with Plaintiff's mental impairments, which he considered under Listing 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders). AR 53. The ALJ determined the paragraph B criteria of these Listings[3] were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 54. He then explained his reasoning regarding paragraph B's four subparts.

First, the ALJ evaluated Plaintiff's activities of daily living and found her to have only a mild restriction. The ALJ recalled Plaintiff's testimony that "during the day, she is able to care for her personal grooming; cook simple meals, wash dishes[,] do laundry[,] fold and put away

---

[3] Paragraph B of Listings 12.04, 12.06, and 12.08 (which was identical at the time in all three) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1,§§ 12.04(B), 12.06(B) (2014). On March 27, 2017, the SSA significantly altered the language of these listings.

clothes; and sweep, mop, dust[,] and vacuum for short periods." AR 53. Moreover, he observed that Plaintiff "is able to drive and grocery shop." AR 53.

Second, the ALJ catalogued the dichotomy in Plaintiff's social functioning, noting on the one hand that she "isolates herself from the world and avoids talking to people," "prefers to sleep," and "does not attend church," while on the other, "she has friends and associates" and "gets along with her mother and children." AR 53. The ALJ accounted for these seeming contradictions by finding the claimant has moderate difficulties with social functioning. AR 53.

Third, as to Plaintiff's concentration, persistence, and pace, the ALJ found Plaintiff had moderate difficulties. To buttress the finding, the ALJ turned to Plaintiff's testimony that she has "memory problems and forgets things," "has problems recalling people's names," "forgets the movies she has watched," and "has also forgotten that she was cooking after she began another project." AR 54.

Lastly, regarding episodes of decompensation, the ALJ found that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 54. This corresponded with his finding that the paragraph C criteria of the relevant listings were not met. AR 54.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 54-58. "After careful consideration of the entire record," the ALJ determined that Plaintiff:

> [H]as the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except no climbing of ladders[,] ropes[,] or scaffolds; [may] occasional[ly] climb[ ] ramps and stairs; occasional[ly] balance, stoop, kneel, crouch and crawl; no overhead reaching above shoulder level bilaterally; limited to understanding, remembering[,] and carrying out simple, routine, repetitive tasks; only occasional interaction with others.

AR 54.

6

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, opining that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms are not entirely credible or disabling for the reasons explained in this decision." AR 58. The ALJ drew support from Plaintiff's self-reported activities of daily living ("ADLs"), which the ALJ summarized thus:

> [P]laintiff is able to care for her personal grooming; cook simple meals such as spaghetti, cereal, and eggs; wash dishes; do[ ] laundry; fold and put away clothes; and sweep, mop, dust[,] and vacuum for short periods. She is able to drive and grocery shop. She likes to watch movies and camp with her children.

AR 55. Furthermore, while the ALJ recognized Plaintiff's degenerative disc disease as severe, he took exception with Plaintiff's sporadic treatment for the condition. *See* AR 57. The ALJ noted that Plaintiff had received limited medical attention, "which she attributes to lack of medical insurance." AR 55. Yet, he observed "there is no proof [Plaintiff] could not have obtained low cost or no cost medical care as necessary." AR 55. "Furthermore," the ALJ opined, Plaintiff's "pain and discomfort have not escalated to the point that she requires emergency room intervention or any surgical procedures." AR 55. Plaintiff's significant ADLs, coupled with nominal treatment for her spinal condition, led the ALJ to find she was "not entirely credible." AR 58.

Along with Plaintiff's adverse credibility finding, the ALJ also relied on the medical opinions in the record to determine Plaintiff's RFC. First, he accorded little weight to the opinion of consultative examining psychologist Dr. John Koewler, Ph.D. AR 58. The ALJ recounted that Dr. Koewler had found Plaintiff to suffer marked limitations in numerous areas, including the ability to: (1) understand and remember detailed or complex instructions, (2) carry out instructions, and (3) interact with the public, coworkers, and supervisors. The ALJ also

7

catalogued the moderate limitations identified by Dr. Koewler, which included the ability to: (1) understand and remember very short instructions, (2) attend and concentrate, (3) work without supervision, and (4) adapt to changes in the workplace. The ALJ discounted Dr. Koewler's opinion, finding "[s]uch extreme limitations are not supported by the medical evidence of record and therefore are accorded little weight." AR 58. Next, the ALJ provided a summary analysis of the opinions of the non-examining state agency medical consultants. He accorded "great weight" to these consultants, "who opined [that Plaintiff] has mild limitations in activities of daily living, moderate limitations in social functioning and concentration, persistence[,] or pace and no episodes of decompensation as well as the ability to perform unskilled work." AR 58.

In the second phase of step four, the ALJ identified past relevant work as a cashier/checker, convenience store cashier, and as a personal care attendant. AR 58. Then, at the third and final phase of step four, the ALJ found that Plaintiff could not return to any of these three instances of past relevant work, as their "demands . . . exceed the current residual functional capacity." AR 58.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE testified that an individual with Plaintiff's RFC could perform the jobs of mill stenciler, DOT # 659.685-026, blending tank tender helper, DOT # 520.687-066, and food inspector, DOT # 529.687-126. AR 59. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 59. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 60.

## V. ANALYSIS

As set forth below, Plaintiff has failed to marshal sufficient support from facts or case law to establish that the ALJ applied incorrect legal standards or that his decision is unsupported by substantial evidence. Consequently, her Motion must be denied. The Court's reasoning as to each of Plaintiff's two claims will be discussed below.

### A. Plaintiff's RFC Properly Accounts for Her Headaches

Plaintiff first argues that the ALJ "erred by failing to consider the effects of [Plaintiff's] migraines" in her RFC. Pl.'s Mot. 9, ECF No. 22. She explains that "[t]he ALJ reasoned at step two that [Plaintiff's] migraines were nonsevere because she has gone many years without treatment for migraines and there is no evidence of lightheadedness, nausea, vomiting[,] or hospitalizations related to this condition." *Id.* at 8 (citing AR 53). Plaintiff alleges this to be the ALJ's only contemplation of her migraines.

Plaintiff directs the Court to two sources to support her claim. First, she recounts her own testimony regarding the onset and treatment of her migraines. *See id.* at 9. She recalls her statements that: (1) lifting her arms too many times affects her neck and gives her migraines, (2) she could do household chores until her neck and shoulder problems caused a headache, and (3) her pain is worse on the right side of her neck, which particularly causes migraines. *Id.* To treat her symptoms, Plaintiff also testified that she: (1) meditates, (2) uses heat or ice, (3) rubs the left side of her head to relieve pain on the right, (4) takes Tylenol PM, but it upsets her stomach, and (5) takes cyclobenzaprine, but the medication does not ease the pain. *Id.* As to both her symptomology and treatment, Plaintiff claims that the ALJ "failed to discuss or acknowledge" either. *Id.*

9

Secondly, Plaintiff points to the findings of two medical professionals, and reminds the Court that "[f]indings of fact made by state agency medical consultants regarding the nature and severity of an impairment must be treated as expert opinion evidence." *Id.* (citations omitted). Plaintiff first observes that Dr. Thomas F. Marren, M.D., who had treated Plaintiff on several occasions, noted Plaintiff's tension headaches as a reason for authorizing her to receive home care. *Id.* Additionally, Plaintiff recalls that she reported her chronic headaches, nausea, and neck pain to consultative examiner Dr. Robert Johnson, M.D. *Id.* At that time, Dr. Johnson "noted palpable tenderness to paravertebral muscles in the right cervical area." *Id.* Plaintiff highlights the fact that, following her consultation with Dr. Johnson, the doctor found that she had "chronic headaches, likely myofascial tension in nature, or possible atypical migraine, or possible postconcussion syndrome due to head injuries." *Id.*

Plaintiff asserts that this evidence, taken together, demonstrates that her "headache pain is a symptom that can reasonably be accepted as consistent with the objective medical evidence of the degenerative disc disease in her cervical spine." *Id.* at 10. And, she concludes, "the ALJ erred by failing to consider properly the symptoms and limiting effects of [Plaintiff's] headaches in the RFC." *Id.* As a consequence, she urges reversal and remand.

The Commissioner challenges the foundation of Plaintiff's claim, contending that it is little more than a general argument "that the ALJ erred by not finding her headaches to be a severe impairment at step two of the sequential evaluation process." Def.'s Resp. 9, ECF No. 26. To support that proposition, the Commissioner points out that Plaintiff has failed to identify "any additional restrictions that she believes are medically warranted, but not included in the ALJ's [RFC] assessment." *Id.* Furthermore, the Commissioner reasons that "the ALJ considered the record as a whole and reasonably found that Plaintiff had the severe physical impairment of

degenerative disc disease – which Plaintiff testified was the cause of her headaches." *Id.* at 11 (citing AR 71-72).

The Commissioner highlights that "Plaintiff did not seek medical treatment explicitly for headaches," notwithstanding "Plaintiff's complaints of headaches at the hearing." *Id.* Rather, the Commissioner maintains that the only evidence of Plaintiff's headaches before the ALJ was Plaintiff's statement to Dr. Johnson that she experienced headaches "and her report to doctors that she was requesting that they complete her disability paperwork that she had tension headaches." *Id.* (citing AR 414, 416, 435). Therefore, the Commissioner concurs in the ALJ's finding that Plaintiff having never "specifically sought treatment for her headaches undermined her claims that the resulted in limitations beyond those found by the ALJ." *Id.* (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

Finally, at a practical level, the Commissioner observes that "Plaintiff testified that lifting her arms too many times caused her headaches." *Id.* (citing AR 72). Based on that testimony, the ALJ "limited her to never reaching above her shoulder level with either arm to accommodate that claim." *Id.* (citing AR 54). This limitation, alongside the remainder of Plaintiff's RFC, leads the Commissioner to conclude that the ALJ "assess[ed] a restrictive residual functional capacity that limited Plaintiff to performing a range of simple light work that did not involve any above-shoulder reaching," and in so doing, the ALJ "accommodated [Plaintiff's] own testimony regarding the cause of her headaches." *Id.* at 12.

1. **Standard for evaluating RFC**

In assessing RFC, the SSA considers a claimant's abilities to meet the demands of work despite her impairment(s). 20 C.F.R. § 404.1545 (2017). The assessment is based upon all relevant medical and other evidence in the record and includes consideration of the limitations

11

caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations. *Id.* § 404.1545(a & e). The assessment considers physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. *Id* . § 404.1545(b, c, d). At the hearing level, it is the ALJ's exclusive province to assess RFC. *See id.* § 404.1546(c); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding that it is the ALJ, not medical professionals, who determines a claimant's RFC).

### 2. Plaintiff has shown no error in the ALJ's RFC assessment

To the extent this Court can actually construe Plaintiff's first claim as such, it is entirely bereft of merit. Indeed, this allegation of error strikes the Court not for what it asserts, but what it neglects. *See Murell v. Shalala*, 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (a claimant must "frame and develop an issue" in a manner that is "sufficient to invoke appellate review"). Although Plaintiff seemingly begins this line of attack by asserting a step two error, she abandons the effort almost immediately.[4] *See* Pl.'s Mot. 8. Then, rather than refocusing her efforts on a bona fide step four RFC challenge, Plaintiff offers only nebulous generalizations. Most importantly, she offers no suggestion of what additional limitations the ALJ should have assigned to accommodate the limitations purportedly caused by her migraines. Plaintiff similarly cites neither to objective medical evidence nor any other form of evidence that suggests physical

---

[4] Plaintiff was wise to abandon this argument. To proceed past step two, it is well established that an ALJ need only find one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256-67 (10th Cir. 2007). In *Allman v. Colvin*, the Tenth Circuit observed that "[a]s long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step." 813 F.3d 1326, 1330 (10th Cir. 2016). "Thus," the court reasoned, "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Id.*

limitations – based on her migraines - beyond those contained within her RFC. *See id.* at 8-10. Stated plainly, Plaintiff offers no competent support for her claim.

In contrast, the record reveals that the ALJ considered and incorporated Plaintiff's headaches into her RFC. Plaintiff admits that her headaches derive from her spinal condition and that the condition constrains her ability to lift her arms without pain. *See id.* at 10. When asked by the ALJ at the administrative hearing why she could not work, Plaintiff testified, "I have, I have problems when I lift my arm too many times. It starts to affect my neck and I, and it starts, it gives me migraines, and I can't lift or turn[ ] a certain way or distance, whatever." AR 72. In response, the ALJ limited Plaintiff to "no overhead reaching above shoulder level bilaterally." AR 54. Thus, the ALJ directly proscribed what *Plaintiff* identified as the catalyst for her migraines.

Substantial evidence exists to support the ALJ's RFC determination, and Plaintiff's argument to the contrary is without basis. Therefore, the Court will deny this claim.

### B. The ALJ Properly Rejected the Opinion of Dr. Koewler

Plaintiff's second argument alleges error in the ALJ's treatment of the opinion of consultative examining psychologist Dr. John Koewler, Ph.D. Plaintiff recounts that, at the SSA's direction, Dr. Koewler examined her on March 4, 2013. *See* Pl.'s Mot. 11. Following the examination, Dr. Koewler diagnosed Plaintiff with multiple conditions, including: (1) mood disorder, not otherwise specified, (2) posttraumatic stress disorder, (3) sleep disorder, (4) pain disorder, (5) mixed personality disorder, and (6) probable borderline intelligence. AR 421. In addition, he assigned Plaintiff the following limitations:

> (1) marked limitation in the ability to understand and remember detailed or complex instructions;
> (2) marked limitation in the ability to carry out instructions;

(3) marked limitation in the ability to interact with the public, coworkers, and supervisors;
(4) marked limitation in the ability to use public transportation;
(5) moderate limitation in the ability to understand and remember very short and simple instructions;
(6) moderate limitation in the ability to attend and concentrate;
(7) moderate limitation in the ability to work without supervision;
(8) moderate limitation in the ability to adapt to changes in the workplace; and
(9) mild limitation in her awareness of normal hazards and the ability to appropriately react thereto.

AR 420.

Plaintiff contends that the ALJ "gave Dr. Koewler's opinion little weight, stating that 'such extreme limitations are not supported by the medical evidence of record and therefore are accorded little weight.'" Pl.'s Mot. 13 (quoting AR 58). Plaintiff objects to the ALJ's assignment of weight and maintains that, in reaching that result, the ALJ "did not properly apply" governing regulations and rulings. *Id.* at 14. She further advances two specific objections to the assessment. First, she challenges the ALJ's conclusion that Dr. Koewler's opinion was not supported by the medical evidence of record, as "the agency ordered the psychological evaluation [specifically] because the medical evidence was insufficient." *Id.* Second, she asserts that the ALJ's "failure to provide the legally proper explanation" mandated by SSR 96-8p necessitates remand.

The Commissioner counters that "the ALJ explicitly considered Dr. Koewler's extreme opinion" and found that his extreme limitations "were not supported by the medical evidence of record." Def.'s Resp. 13. In support, she highlights the ALJ's observation that Plaintiff failed to seek "specialized mental health treatment during the relevant time period." *Id.* (citing AR 57). As a consequence, the Commissioner argues that "the only other evidence of record regarding Plaintiff's claimed mental limitations were the state agency psychologists' opinions, both of which indicated that [she] could perform work involving only incidental contact with others and

14

the complexity of tasks was rote with few variables (unskilled work)." *Id.* at 14 (citing AR 132-36, 162-66). The Commissioner observes that the ALJ accorded these state agency psychologists' opinions great weight, and correspondingly "assessed a residual functional capacity that was in line with these opinions." *Id.* In closing, the Commissioner opines that "[g]iven the lack of any other objective evidence in the record to support Dr. Koewler's extreme limitations – including any mental health treatment notes to support the opinion – the ALJ's finding was reasonable . . . and should not be disturbed on review." *Id.* at 15.

On this claim, Plaintiff again fails to persuade the Court. Governing regulations require that "[r]egardless of its source," an ALJ "will evaluate every medical opinion" received. 20 C.F.R. § 404.1527(c) (2016). Medical opinions include statements from consultative psychologists "that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See id.* § 404.1527(a)(2). During the evaluation process, ALJs are to follow Social Security Ruling 96-6p, which provides ALJs explicit guidance on how to consider opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* at *1. ALJs may not ignore these opinions and must explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are generally regarded with less significance than treating sources, SSR 96-6p mandates the following approach for ALJs in assigning their opinions weight:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at

15

the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id. See Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) (holding that generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight).

Based on relevant regulations and rulings, this Court finds no error in the ALJ's evaluation of Dr. Koewler's opinion. SSR 96-6p makes clear that an ALJ must explain the weight given to a consultative examiner's opinions. In this case, the ALJ did exactly that; he assigned little weight to Dr. Koewler's opinion and explained that he did so because "such extreme limitations are not supported by the medical evidence of record." AR 58.

Plaintiff's reliance on SSR 96-8p is misplaced, as it deals with proper RFC evaluation *in toto* rather than the specific treatment of medical opinions. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In fact, with the exception of its final paragraph, which deals with *treating* physician opinions, the only other mention of medical opinions in SSR 96-8p is the following:

> *Medical opinions.* The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

*Id.* at *7 (emphasis in original). Applying this section to the instant matter, this Court can find no plausible basis to find that the ALJ neglected a duty under SSR 96-8p. His only obligations under the Ruling were to consider and address Dr. Koewler's opinion, and to explain why the opinion was not adopted if the assessment did not conform to his RFC. The ALJ inarguably carried out both of these charges, and any duties he carried pursuant to SSR 96-8p were thereby properly discharged.

16

Plaintiff's final contention that the ALJ could not find Dr. Koewler's opinion inconsistent with other medical evidence is also flawed. The Commissioner does not dispute that Dr. Koewler's consultation was ordered in response to the dearth of mental health records in Plaintiff's file. But the fact of that preceding scarcity does not transform Dr. Koewler's subsequent opinion into a document that is somehow beyond criticism or comparison to the opinions of other medical professionals. To the contrary, in reviewing the opinion of a consultative examiner like Dr. Koewler, the ALJ was bound by Ruling 96-6p to measure Dr. Koewler's opinion against not only the record as a whole, but particularly *against other medical opinions in the record*. *See* SSR 96-6p, 1996 WL 374180, at *2 (requiring an ALJ to weigh the consistency of a consultative examiner's opinion "with the record as a whole, including other medical opinions"). Here, the ALJ followed the Ruling and compared Dr. Koewler's opinion (replete with extreme limitations) against that of the two nonexamining state psychologists, Dr. Abesie Kelly, PhD., and Dr. Christal Janssen, Ph.D., both of whom eschewed Dr. Koewler's extreme limitations and opined instead that Plaintiff could perform unskilled work involving only incidental contact with others. *Compare* AR 418-21 (Dr. Koewler) *with* AR 132-36 (Dr. Kelly), AR 162-66 (Dr. Janssen). The ALJ chose to accord little weight to the opinion of Dr. Koewler and great weight to the opinions of the state agency psychologists, a reasonable choice within his purview to make. Therefore, this Court finds that the ALJ applied the proper legal standards in evaluating Dr. Koewler's opinion, and that his evaluation is supported by the substantial evidence discussed above. Accordingly, the Court will also deny this claim.

## VI. CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the ALJ correctly applied the proper legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum [ECF No. 22] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause be **DISMISSED.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*